IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

NRS PROPERTIES V. AGRIBUSINESS & FOOD ASSOCS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

NRS PROPERTIES, L.L.C., APPELLEE,

V.

AGRIBUSINESS AND FOOD ASSOCIATES, L.L.C., AND MARK LAKERS, PERSONALLY, APPELLANTS,
AND LAKERS GROUP, L.L.C., AND LNS, INC., INTERVENORS-APPELLEES.

Filed July 14, 2015.    No. A-14-662.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Reversed and remanded with directions.

D.C. Bradford and Ryan J. Dougherty, of Bradford & Coenen, L.L.C., for appellants.

Daniel W. Ryberg for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Agribusiness and Food Associates, L.L.C., and Mark Lakers, personally (collectively "the Appellants") appeal from an order of the district court for Douglas County, which denied their motion to vacate the judgment entered against them in favor of NRS Properties, L.L.C. Because we conclude that the district court abused its discretion in denying the motion to vacate the judgment, we reverse the court's order denying their motion, and we remand to the district court with directions to vacate the judgment.

### BACKGROUND

On December 16, 2010, NRS Properties filed a complaint against the Appellants seeking damages for alleged breach of an office building lease. The Appellants subsequently filed an

- 1 -

answer and counterclaim for wrongful eviction. Further pleadings were filed, and in January 2013, the Appellants' counsel filed a motion to withdraw from the case. At the hearing on the motion to withdraw, held on January 22, 2013, the court received into evidence an affidavit from the Appellants' withdrawing attorney, in which he stated that on various identified dates in January, he had sent copies of certain motions, including his motion to withdraw and notice thereof, to the Appellants by first-class mail at a particular address on Douglas Circle in Omaha, Nebraska. Copies of the listed motions were also sent to the Appellants via a specified email address. The court entered an order authorizing the withdrawal on January 24.

On January 29, 2013, the district court entered an order, providing notice to the parties that there were matters before the court that would be addressed at a further hearing on January 31. The order was sent to the parties with copies mailed to the Appellants at the Douglas Circle address provided by their former counsel. According to the court's statements in its order ruling on the motion to vacate at issue in this appeal, no "return to sender" or "unable to deliver or forward" documentation was received by the clerk's office or the court in connection with this mailing. The court also noted that NRS' counsel appeared at the January 31 hearing but the Appellants did not appear.

On April 25, 2013, the district court entered an order for pretrial conference and trial, setting the pretrial conference for August 9 and trial for August 12. According to the court's statements in its order ruling on the motion to vacate, this order was sent to the Appellants at the Douglas Circle address provided by their former counsel, was not returned to the court or the clerk's office, and there was no "return to sender" or "unable to deliver" documentation filed. NRS' counsel appeared on August 12, but the Appellants did not. Because another case scheduled for that date had not yet concluded, the trial in this case was reset.

On August 12, 2013, the district court entered an order for trial, setting trial for September 3, 2013. The order for trial was mailed directly to Agribusiness at an address on Indian Hills Drive in Omaha, but was returned to the court with a U.S. Postal Service sticker stating "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," and "UNABLE TO FORWARD." The address used by the district court was the former address of Agribusiness' former counsel and was never a business address for Agribusiness. The order for trial was also mailed to Lakers at the Douglas Circle address and was returned to the district court with handwritten "Return to Sender" and "Wrong Address" notations, but no U.S.P.S. sticker. Lakers had not resided at the address used by the district court since September 2012. The returned envelopes are file stamped September 4, 2013.

The district court proceeded with trial on September 3, 2013 without the Appellants' presence. At the start of trial, the court noted that NRS' counsel was present and that the Appellants were not present. NRS' counsel indicated that he was ready to proceed, and asked the court if the record could reflect that it was the fourth time in a row that neither of the Appellants had shown for a court matter. In response to this request, the court stated, "And it does show that proper notice has been sent, and that [plaintiff's counsel] was bumped at least once prior to this time for another trial; . . . but [the Appellants] did not appear on the previous occasion that the matter was set for trial." The court then heard evidence from NRS, and on September 26, the court entered judgment against the Appellants, jointly and severally, in the sum of $290,378.40, although we note that

elsewhere in its order, the court stated the total amount due was $290,178.40. The notice of judgment was not sent to the Appellants but was sent to their former attorney, who did not send a copy of the notice to Appellants.

On November 22, 2013, NRS filed a motion for order in aid of execution on the judgment. NRS identified certain motor vehicles located in Lakers' possession at his current address and which were registered to LNS, Inc. and Lakers Group, LLC, two entities with which Lakers was allegedly affiliated. The court granted the motion and entered an order in aid of execution to include the two vehicles on December 3.

The Appellants learned of the judgment in December 2013 when the sheriff's office attempted to enforce the district court's order in aid of execution. The Appellants quickly hired a new attorney, who filed a motion to vacate the judgment on December 24. Also on December 24, counsel filed a motion for leave to intervene on behalf of Lakers Group and LNS, the entities to which the vehicles in question were registered (collectively "the Intervenors"). The court granted the motion to intervene and granted emergency relief to stay the sale of the vehicles pursuant to the order in aid of execution. A complaint to intervene was filed on January 29, 2014, and NRS filed an answer and counterclaim.

On March 27, 2014, the district court heard the Appellants' motion to vacate the judgment as well as the Intervenors' request to vacate and set aside the order in aid of execution. In connection with the motion to vacate the judgment, the court received an affidavit from Lakers, two affidavits from the Appellants' former attorney, a transcription of a debtor's exam of Lakers, repair invoices for one of the cars at issue to show the address being used, and a certified copy of Lakers' conviction in 2010 for abuse of public records. The repair invoices are from June and July 2013 and identify Lakers as the customer with the Douglas Circle address being his address. Exhibits to the debtor's exam included the 2012 federal tax return for Lakers Group, which identified its address and Lakers' address as being the Douglas Circle address. The court also took judicial notice of "the precipice [sic] [file-stamped December 16, 2010] that was originally filed in this case showing that service was to be made upon each of the defendants at a specified address," a motion for summary judgment to show the certificate of service indicated the pleading was mailed to "the only address that anybody had . . . on Douglas Street [sic]," and the motion for order in aid of execution and the attachments to that motion.

In his affidavit, Lakers stated that he was the president of Agribusiness and had been so for all periods relevant to this case. Lakers then stated that at the time their former attorney withdrew, the Appellants did not have new counsel to represent them. Lakers stated that he did not receive the August 2013 order setting trial for September 3, that he was not residing at the Douglas Circle address at the time the court mailed the order, and that he had not resided at that address since September 2012. He also stated that Agribusiness did not receive the order for trial, which was sent to the former address for the Appellants' former counsel and was never a business address for Agribusiness. Lakers stated that the Appellants did not receive notice of the judgment entered by the district court from the Clerk of the Court or from anyone else. According to Lakers, the Appellants did not know that the judgment had been entered until December 16, 2013 when the sheriff informed him that he was attempting to enforce the order in aid of execution.

In addition to again receiving the affidavit from the Appellants' former counsel first received into evidence during the hearing on his motion to withdraw, the district court also received a second affidavit in which their former counsel outlined his period of representation of the Appellants. He also stated that neither he nor his law firm received a copy of the order for trial entered by the court in August 2013. Finally, he stated that he did receive a copy of the notice of judgment issued by the Clerk of the District Court, but that he did not forward the notice to the Appellants because he was not their attorney.

After hearing argument from counsel, the district court orally denied the motion to vacate the judgment. The court then received additional evidence and heard testimony from Lakers in connection with the Intervenors' request to vacate and set aside the order in aid of execution. Although Lakers' testimony was offered in support of the Intervenors' request and not the Appellants' motion to vacate, we do note that Lakers was asked about the address on the 2012 federal tax return for Lakers Group and the title for one of the vehicles in question. With respect to the tax return, Lakers agreed that although there was no date on the signature page, the document might have been filed in April 2013. With respect to the Douglas Circle address listed on the tax return, he testified, "That's not what it was at that time [April 2013], but that's what it says." With respect to the car title, Lakers agreed that he was involved in the purchase of the car in September 2013. With respect to the owner's address shown on the title on that date, he testified, "It's the wrong one, but it's [the Douglas Circle address]." Lakers testified further that he left that address in August 2012. Apparently, the hearing on the Intervenors' request was continued to April 7 to allow for testimony from an additional witness, whose testimony is referenced by the court in its order ruling on the Intervenors' requests, but the record on appeal does not include a bill of exceptions for that date.

On June 23, 2014, the district court entered an order denying the Appellants' motion to vacate the judgment, without any further explanation. The court also ruled on the Intervenors' requests to vacate and set aside the order in aid of execution, but we need not set forth the details of the court's analysis with respect to the Intervenors' requests as this portion of the order is not challenged in this appeal.

## ASSIGNMENTS OF ERROR

The Appellants assert, combined and restated, that the district court abused its discretion in denying their motion to vacate the judgment.

## STANDARD OF REVIEW

The decision to vacate an order any time during the term in which the judgment is rendered is within the discretion of the court; such a decision will be reversed only if it is shown that the district court abused its discretion. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015). A much stronger showing is required to substantiate an abuse of discretion when a judgment is vacated than when it is not. *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004).

ANALYSIS

*Power to Vacate.*

The Appellants seek to vacate the judgment entered on September 26, 2013. They filed their motion to vacate on December 24, 2013, within the same term. The local rules of the district court for the Fourth Judicial District provide that the term of the court runs from January 1 to December 31 of the calendar year. See, Rules of Dist. Ct. of Fourth Jud. Dist. 4-1 (rev. 1995). A court has inherent power to vacate or modify its own judgments at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. *Kibler v. Kibler, supra.* Accordingly, the district court had the inherent power to vacate or modify the September judgment through December 31, 2013. We note that although no order was entered on the Appellants' motion until after the term, this does not change the court's inherent power to vacate as Neb. Rev. Stat. § 25-2001(1) (Reissue 2008) provides, "The inherent power of a district court to vacate or modify its judgments or orders during term may also be exercised after the end of the term, upon the same grounds, upon a motion filed within six months after the entry of the judgment or order."

The Appellants assert, combined and restated, that the district court abused its discretion in denying their motion to vacate the judgment. Specifically, they assert that the court abused its discretion in determining that the August 2013 order setting trial and notice of the September 2013 judgment were properly delivered to them. We address those assertions separately below.

*Order for Trial.*

The Appellants argue that they did not receive the order for trial and that the judgment should be vacated because it was secured through an irregularity in the proceedings and resulted from a trial conducted without notice to the parties.

Neb. Ct. R. Pldg. § 6-1105(b) (rev. 2008) provides, in relevant part:

(1) Whenever in any action or proceeding, any order, motion, notice, or other document, except a summons, is required by statute or rule of the Supreme Court to be served upon or given to any party represented by an attorney whose appearance has been noted on the record, such service or notice shall be made upon or given to such attorney, unless service upon the party or some other person is ordered by the court.

(2) Service upon an attorney or upon a party not represented by an attorney shall be made by . . . mailing it to the person to be served by first-class mail at the address designated pursuant to § 6‑1111(a)(1), or if none is so designated, to the last-known address of the person.

Neb. Ct. R. Pldg. § 6-1111(a)(1) (rev. 2008) provides:

Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address, telephone number, and e-mail address, if any. Each paper signed by an attorney shall state the attorney's bar identification number. Except when otherwise specifically provided by statute, pleadings

need not be verified or accompanied by an affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

At trial in September 2013, the district court stated that the record showed that "proper notice ha[d] been sent," although it did not specify what portion of the record it was relying on for that determination. In denying the motion to vacate the judgment, the court did not provide reasoning either from the bench or in its order. It is apparent, however, from a review of the background section of the court's order that the court placed some emphasis on the fact that various documents, sent after Appellants' former counsel's withdrawal and prior to the August 2013 trial notice, were not returned to the court as undeliverable. The court also commented on the fact that the copy of the August 2013 order setting trial for September that was sent to Lakers at the Douglas Circle address was not returned with a U.S.P.S. sticker but with handwritten notations. The court further stated, "The Court refrains from making any assumptions but mentions this due to the evidence presented on the hearing on the Intervenors' motion and the testimony of Mark Lakers at the hearing on April 7, 2014. Mr. Lakers testified he was still living at [the Douglas Circle address] in August 2013." However, as noted by the district court, this evidence was not offered in support of the motion to vacate, and as noted above, we do not have a bill of exceptions from any hearing conducted on April 7, 2014, so we are unable to review any testimony by Lakers on that date.

The Appellees cite *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995), and argue that it is dispositive. In *Roemer*, a patient brought a medical malpractice action against her physician. The patient's attorneys dissolved their law partnership and did not inform the court of their new addresses or any changes in the patient's counsel of record. Apparently, the patient was represented by a different partner after the law partnership was dissolved. The case was dismissed on progression after notice of a show cause hearing had been mailed to the attorney of record's old address. The patient's new counsel did not contact the court to inquire about the status of the case until the next term of court, five months after the case had been dismissed. The trial court denied a motion to reinstate the case. On appeal, the patient argued that her case should have been reinstated for various reasons, including through the trial court's inherent powers of equity. In addressing this argument, the Nebraska Supreme Court stated:

> Any litigant who seeks equity must herself do equity. . . . Yet, in the name of equity, this court is presented with a plea for deliverance by an appellant who failed to give notice of substituted counsel; who failed to notify the court of counsel's address changes; who failed to check the local legal newspaper for scheduled hearings in her case; who failed to comply with an order compelling discovery; who failed to inquire into the status of her case until fully 5 months after its dismissal; who, even at the hearing on her motion to reinstate, failed to present evidence indicating any merit to her claim such that the district court might be persuaded of equities at stake; and who now asks this court to reinstate an action against [the physician] who denies liability and has awaited finality-albeit without resolution-for 5 years, as of the date of this decision. . . . Equity follows the diligent, not the negligent. . . .

(Citations omitted.) 248 Neb. at 745-46. In finding no abuse of discretion and affirming the decision to deny reinstatement, the Supreme Court also observed that regardless of whether represented by counsel, the plaintiff--not the court, not opposing counsel--bears responsibility to prosecute the case with reasonable diligence. *Id*. A litigant has a duty to follow the progress of the case, rather than to merely assume that counsel is doing everything necessary and proper. *Id*.

In the instant case, it is clear that the Appellants did nothing to further the litigation or advise the district court of any new address for service between the time their attorney withdrew from representation in January 2013 and when the trial occurred and judgment was entered in September 2013, despite their duty to follow the progress of the case and prosecute their counterclaim diligently. During this period of time, the record reflects that various pleadings were mailed to the Appellants and were not returned as undeliverable. The Appellants did not appear for any of the hearings following their former counsel's withdrawal and the Appellants do not claim to have not received any of those documents prior to the order for trial in August 2013.

Nevertheless, Appellants were entitled to notice of the September 2013 trial date and the record reflects that such was not received. While the order for trial was sent to Lakers at his last known address on Douglas Circle, his affidavit indicates that he did not live there in August 2013. The district court discussed some credibility issues with regard to Lakers' position, however, much of this evidence was offered in support of the Intervenors' motion and some of that evidence is not in our record. With regard to Agribusiness, the order for trial was sent to Agribusiness at the former attorney's former address, which was not the last known address for Agribusiness. The envelopes indicating that the order for trial had not been delivered to the Appellants were file-stamped by the district court on September 4, 2013, the day after the trial. Thus, at the time the judgment was entered on September 26, it is clear that the orders for trial had been returned to the court.

Under the particular circumstances of this case, we find that there was an irregularity in the entry of the judgment due to the lack of notice to the Appellants of the trial. In reaching this conclusion, we also consider that the notice of judgment was not mailed to the Appellants as we discuss below. It was not until execution on the judgment was begun that the Appellants were notified of the judgment and they promptly took action, through new counsel, to vacate the judgment. We conclude that the district court abused its discretion in denying the Appellants' motion to vacate the judgment.

*Notice of Judgment*.

The Appellants also argue that in denying their motion to vacate, the district court impliedly found that notice of the judgment was properly delivered to them, even though it was sent to the address of their former counsel, thereby denying them an opportunity to seek a new trial and/or appeal the judgment. They argue that the clerk's failure to send notice of judgment to them was likely a mistake, but one beyond their control that deprived them of an opportunity to seek a new trial or appeal the judgment.

Neb. Rev. Stat. 25-1301.01 (Reissue 2008) provides:

Within three working days after the entry of any civil judgment, except judgments by default when service has been obtained by publication or an appearance of the defaulting party has been made, the clerk of the court shall send a postcard or notice by United States

mail to each party whose address appears in the records of the action, or to the party's attorney or attorneys of record, advising that a judgment has been entered and the date of entry.

In *Tietsort v. Ranne*, 200 Neb. 651, 264 N.W.2d 860 (1978), the Nebraska Supreme Court affirmed an order setting aside a default judgment as to a defendant whose attorney of record had withdrawn from the case. Although there were a number of problems with the notice of judgment, the record seemed to indicate that it had been sent to the attorney who was no longer an attorney of record. The Supreme Court stated that doing so was not notice to the defendant and that as he no longer had an attorney of record, notice to him was necessary.

Similarly, in the present case, the record shows that the notice of judgment was sent to the Appellants' attorney, who was no longer their attorney of record. As the Appellants no longer had an attorney of record, notice to them was necessary. In his affidavit, Lakers states that the Appellants did not receive notice of judgment from the clerk of the court or from anyone else and that they were unaware of the judgment until December 16, 2013, when the sheriff informed Lakers that he was attempting to enforce the order in aid of execution. The Appellants' former attorney confirms in his affidavit that he received the notice of judgment and did not forward it to the Appellants because he was no longer their attorney. There is nothing in the record to contradict these statements. By the time the Appellants learned of the judgment, both the time for filing a motion for new trial and the time for appeal had expired. See, Neb. Rev. Stat. § 25-1144.01 (Reissue 2008) (motion for new trial shall be filed no later than 10 days after entry of judgment) and Neb. Rev. Stat. § 25-1912(1) (Reissue 2008) (notice of appeal to be filed within 30 days after entry of judgment).

The Nebraska Supreme Court has stated that the right of a party to move for a new trial or to appeal cannot ordinarily be defeated by the clerk of the court's failure to give the parties notice of the entry of the judgment. *Nye v. Fire Group Partnership*, 263 Neb. 735, 642 N.W.2d 149 (2002). See, *Tietsort v. Ranne, supra*; *Pofahl v. Pofahl*, 196 Neb. 347, 243 N.W.2d 55 (1976).

In the case before us, as in *Tietsort v. Ranne, supra*, and *Nye v. Fire Group Partnership, supra*, the Appellants are entitled to have the judgment entered against them vacated.

CONCLUSION

We reverse the order of the district court denying Appellants' motion to vacate, and we remand with directions to vacate the judgment entered on September 26, 2013.

REVERSED AND REMANDED WITH DIRECTIONS.